Opinion of the Court.
THE heirs of Mordecai Redd filed their bill, claiming, by force of an entry, relief against sundry adverse entries and patents. The defendants set up their patents only. The court below sustained the complainants’ entry for part of the interference, and from the decree each party appealed.
The entry relied on, is in the name of Mordecai Redd, for 1,500 acres, dated June 29th, 1780. Its calls are, “ on the south side of the south fork of Elkhorn, adjoining William Bennett’s settlement and preemption on the north-east side, and to extend north *400 eastwardly for quantity, so as to include a pond and spring, known by the name, Hugh Forbes’ Pond."
On the 22d of April 1780, William Bennett obtained a certificate for settlement, in the following words : “ William Bennett, by John Crittenden, this day claimed a settlement and pre-emption to a tract of land in the district of Kentucky, on account of improving lands and raising a crop of corn in the country, in 1776, lying on a small branch of the south fork of Elkhorn, known by the name of Crittenden's Camp, to include an improvement. Satisfactory proof being made to the court, they are of opinion that the said Bennett has a right to a settlement of 400 acres of land, to include the above location, and the pre-emption of 1000 acres adjoining, and that a certificate issue accordingly.”
On the 21st of June 1780, William Bennett entered his certificate for settlement, with the surveyor, to the following effect: “ William Bennett enters 400 acres upon a certificate for settlement, on a small branch of the south fork of Elkhorn, at a place known by the name of Crittenden’s Camp, to include his improvement."
Bennett, having procured a pre-emption warrant, did not enter it with the surveyor until the 19th of December 1782, a period posterior to the date of the complainants’ entry, and for this reason it will not be further noticed; for if the complainants’ entry is supported, it must be by attaching it to Bennett’s settlement only, as a good locative call, as has been done by former determinations of this court; and the validity of the calls of the settlement must first be investigated.
The notoriety of Elkhorn is admitted, and it is proved beyond a controversy, that Crittenden had a camp on its waters, well known by the name of “ Crittendon’s Camp,” to nearly all conversant in the neighborhood, and at divers stations. Around and including this camp, was a small clearing, where corn was raised in 1776, which, no doubt, contributed to its notoriety. It has been contended in argument, that the true position of this camp and improvement including it, is not sufficiently identified. Several of the witnesses swear to the place, but will not fix the precise spot of the camp itself, or the margin of the clearing. Patrick Jordan is positive as to the spot ; but his reputation is vitally assailed. So that if the identity of the *401 objects rested on his testimony alone, it ought not to be taken as sufficiently proved. But, independent of his evidence, the identity of the place is preserved, in a manner not usual for such objects in the present altered state of the country. All agree as to place, generally, and that it was near a spring now existing ; and William Steele, the surveyor who made out the plat for this cause, deposes, that he knew the camp and improvement in the year 1783, and had frequently seen it before any modern improvements were made there; and that, in July 1803, he officially, in another suit, surveyed the camp and improvement, then under the direction of John Crittenden, Luke Cannon and others, in the same manner that he has laid it down in this cause. This, added to the general knowledge of the spot, deposed to by the other witnesses, we conceive ought to be held a reasonable and sufficient identification. It cannot be pretended, from the proofs in this cause, that Forbes’spring and pond had become nototious, as now claimed by the complainants. Jordan is the only witness who identifies it and does not prove its notoriety. Bradford, who made the location, proves that he saw it in May 1780, and then derived his knowledge of its name from Crittenden and Forbes. He does not prove that name to be notorious; and the rest of the witnesses, who had knowledge of the neighborhood at the date of the entry, know nothing about it; Bradford was not brought to the ground, to iden tify it ; but describes its position as Jordan does. N. 53 E. 290 poles from the camp, a spring running into a pond is found, claimed by the complainants, and nearly corresponding in position with the description given by Bradford.
The first material question arising in this cause, and one that has been debated in argument, under this state of facts, is, what improvement is intended by the expressions, “ an improvement,” in the certificate, and “ his improvement,” in the entry of Bennett? No proof is adduced, showing that Bennett had, or claimed art improvement at the camp, or in its neighborhood. It is contended, on the part of the complainants, that these expressions intend the improvement of Crittenden, surrounding his camp, and that nothing else was intended as the locative call of the claim. On the other hand, it is alleged, that the certificate in *402 tended an improvement different from the camp, and that the entry calls for Bennett’s improvement; and as the complainants have failed to show such improvement, the claim cannot have a position assigned to it, in the absence of the very key stone of the location. The meaning of these documents must be gathered from the face of them, in connexion with the facts proved. They present a question of no little difficulty. They ought, however, to be construed with a mild interpretation, and not rigidly ; but this mildness ought never to be carried so far as to alter the idea conveyed to the mind by their words. The certificate alone, seems to say that the branch was “known by the name of Crittenden’s Camp.” If this be its real meaning, the improvement afterwards mentioned, cannot mean the camp itself, but an object distinct, and the camp is only as the name of the branch, or as giving it the name. Had the camp been intended, the phraseology is so easy to express it, that it cannot be supposed that the locator intended to deceive, by concealing the fact, that the camp and improvement were one and the same object, or that he would not have adopted the natural expression, including the camp. The expression, however, “known by the name of Crittenden’s Camp,” when it is known that there was no branch of that name, may be construed as descriptive of the land located, and the locator intended by it to say, that the place claimed, and which he was about to appropriate, was the place known “by the name of Crittenden’s Camp.” This, perhaps, is the true meaning, but it does not lessen the difficulty; for the expressions which follow, “to include an improvement,” still lead the mind to conclude, that although the camp was intended as general description, yet another nameless improvement was intended as the favored spot, by which the precise centre and margin of the claim was to be determined. The facility with which the locator could have stated, that the camp was the object to be included, still remains; and the pains which are taken to avoid saying this, leads to the conclusion that a different object was intended. From the certificate, therefore, we conceive that this claim is not entitled to make Crittenden’s clearing and camp the centre, as its locative call.
*403 We will next examine the entry, to see whether it will extricate us from this difficulty. Whether we consider this document alone, or connected with the certificate, the same conclusion must result. This explains the words, “ Crittenden’s Camp,” in the certificate, to mean, as we have last interpreted them, and that is, that the place designed, instead of the branch, was known by that appellation. This proves that the locator, who was bound by his certificate in making his entry, discovered the ambiguity of the certificate, and applied the remedy. We conceive the doubt, whether Crittenden’s improvement was actually expressed as the central object, by the certificate, was equally plain ; and that while solving doubts, he would at once have espied this, and have said, “ including the camp” at once. This he has not done, but still adds, to“ include” the “improvement;” and proceeds to solve the last ambiguity suggested, by pointing out what improvement was intended, by changing the words, “ an improvement,” to “ his improvement.” Unless, then, the possessive pronoun, “ his,” can be taken to relate to Crittenden, instead of Bennett, the claim cannot be sustained. To do so, is certainly against the plain grammatical construction of the sentence, and the uniform construction of similar calls. Bennett is the agent to whom the whole entry has respect, and to whom all relative expressions must apply; and not one whose name is mentioned by way of description only. This is the universal language of such entries and certificates, and their constant construction. How many names soever may be used collaterally, in the descriptive part of these locations, his improvement, has always been taken to mean the improvement of the person locating. Besides, if Bennett’s improvement was shown in this cause, in the neighborhood of the camp, the court could not hesitate at once to attach the claim to it, and support it as the essential call. As it is not shown, shall we strain the locator’s expressions, to attach him to an improvement of another name, because it is made notorious? We conceive not. We therefore conclude, that the entry of Bennett, without his improvement, cannot, in accordance with numerous decisions of this court, be supported, and that the complainants' entry, without this call, must be defective and void.
*404 The decree of the court below must be reversed with costs of both appeals to the defendants below, and the cause remanded, with directions there to dismiss the complainants’ bill with costs.